IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH FRNDAK *and* DIANE FRNDAK, | ) ) |
| Plaintiffs, | ) ) |
| | ) Civil Action No. 20-1411 |
| v. | ) ) |
| PENNSYLVANIA STATE POLICE, *et al.*, | ) Judge Cathy Bissoon ) ) |
| Defendants. | ) |

## **MEMORANDUM ORDER**

### I. MEMORANDUM

For the reasons stated below, the Motion to Dismiss filed by Defendants Corporal Gregory Bogan and the Pennsylvania State Police (Doc. 53) will be GRANTED IN PART AND DENIED IN PART; the Motion to Dismiss filed by Defendant Liberty Bail Bonds Inc. (Doc. 50) will be GRANTED; and the Motion to Dismiss filed by Defendant Anthony McKay (Doc. 47) will be GRANTED IN PART AND DENIED IN PART.

  A. Background

The facts as alleged by Plaintiffs in their Second Amended Complaint (hereinafter "Complaint") (Doc. 42) are as follows. On January 29, 2019, Plaintiff Keith Frndak cosigned an indemnity agreement and a promissory note between his estranged son, Nathan Frndak, and Defendant Liberty Bail Bond, Inc. ("Liberty"), agreeing to indemnify Liberty $5,000 if Nathan Frndak's bail bond was revoked. Complaint at ¶¶ 16-18. Following Nathan Frndak's failure to appear for a hearing, the court issued a Bench Warrant, a Notice of Bond Forfeiture and a Bail

Piece Order in July 2019.  Id. at ¶¶ 19-21.  On September 9, 2019, Nathan Frndak petitioned the court through counsel for an extension of time and stay of forfeiture, which the court granted the following day.  Id. at ¶¶ 22-23.

Beginning on September 11, 2019, Plaintiff Keith Frndak began receiving calls, voicemails and texts from Defendant Anthony McKay ("McKay"), accusing Plaintiff Keith Frndak of hiding Nathan Frndak and demanding payment.  Id. at ¶¶ 24-30, 33-35, 37.  McKay presented himself as an employee of Liberty.  Id. at ¶ 27.  Another individual, who identified himself as "Greg, from Liberty Bonds," made similar threatening calls to Plaintiff Keith Frndak.  Id. at ¶ 31.

On December 8, 2019, Defendant Corporal Gregory Bogan ("Bogan"), McKay and Defendant John Doe ("Doe") (together, the alleged "bounty hunters") arrived at Plaintiffs' house while Plaintiffs and their grandchildren were home.  Id. at ¶¶ 38-49.  One of Plaintiffs' grandchildren answered the door first, before calling for Plaintiff Keith Frndak.  Id. at ¶¶ 46-47.  The "bounty hunters" barged in the door past the child.  Id. at ¶ 48.  When Plaintiff Keith Frndak demanded to know what the "bounty hunters" were doing, Bogan stated that they were going to search the house for Nathan Frndak.  Id. at ¶ 50.  Plaintiff Keith Frndak offered to talk to the "bounty hunters" outside, but they refused and insisted on searching the home.  Id. at ¶¶ 52-53.  One of the "bounty hunters" stated that they would search the house or that they would take Plaintiff Keith Frndak to jail.  Id. at ¶ 53.  Plaintiff Keith Frndak responded and said Nathan Frndak was not there.  Id. at ¶ 54.  Plaintiff Diane Frndak, hearing the commotion, joined the scene and asked what was going on, and Defendant Bogan responded that they were going to search the home.  Id. at ¶¶ 55-56.  Both Plaintiffs noticed an odor associated with the consumption of alcohol on the alleged "bounty hunters."  Id. at ¶ 57.  Plaintiff Diane Frndak also

told the "bounty hunters" that Nathan Frndak was not there and demanded that they leave, to which Defendant Bogan replied by threatening her arrest. Id. at ¶¶ 58-59. Plaintiff Diane Frndak then asked for identification and a copy of a document purportedly signed by Plaintiff Keith Frndak, but the "bounty hunters" refused. Id. at ¶¶ 60-67. Plaintiff Diane Frndak stated that she would call the police, at which point one of the "bounty hunters" stated that Defendant Bogan was the police, which Defendant Bogan confirmed. Id. at ¶¶ 67-70. Plaintiff Diane Frndak asked Defendant Bogan for law enforcement identification, and Defendant Bogan pointed to a patch on his arm and his name tag and showed her a laminated card. Id. at ¶¶ 72-77. Defendant Bogan again threatened to arrest Plaintiffs and to call Children and Youth Services to remove Plaintiffs' grandchildren. Id. at ¶¶ 77-78. When Plaintiff Diane Frndak asked for paperwork authorizing the search, Defendant Bogan responded that there was an arrest warrant out for Nathan Frndak and did not show her any documentation. Id. at ¶¶ 80-81, 83-85. Plaintiffs aver that Nathan Frndak's docket at the Butler County Court of Common Pleas does not include an arrest warrant. Id. at ¶ 81. The "bounty hunters" thoroughly searched the home. Id. at ¶¶ 82, 86. Another person, unidentified but alleged to be "[a]nother apparent PSP Trooper, who had apparently been searching the property" entered the home and did not show identification when asked. Id. at ¶¶ 103-105. Before leaving, Bogan told the Plaintiffs they would be back on Christmas. Id. at ¶ 106.

After the "bounty hunters" left Plaintiffs' home, Plaintiff Keith Frndak received a call from Bogan, who accused Plaintiff Keith Frndak of lying and calling Nathan Frndak as soon as the "bounty hunters" had left, and threatened to subpoena Keith Frndak's phone records and to come back to arrest them. Id. at ¶¶ 107-113. Plaintiff Keith Frndak called the Butler County State Police Barracks to file a complaint. Id. at ¶¶ 114-116. The "bounty hunters" traveled to

3

another house owned by Plaintiffs.  Id. at ¶ 117.  They forcibly entered that house, broke furniture, and discovered and disabled all but one of the security cameras.  Id. at ¶¶ 118-120.

### B. Legal Standard

At the motion to dismiss stage, the Court first accepts all factual allegations in the complaint as true.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).  A court should dismiss a complaint if it fails to set out "enough facts to state a claim of relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A plaintiff should provide the Court with sufficient facts to state a plausible claim for relief.  Fed. R. Civ. P. 8(a)(2).  At the motion to dismiss stage, a court should "assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them."  Connelly v. Lane Const. Corp., 809 F.3d 780, 790 (3d Cir. 2016).

### C. Defendants Corporal Gregory Bogan and the Pennsylvania State Police's Motion to Dismiss (Doc. 53)

*1. Defendant Pennsylvania State Police*

First and foremost, Pennsylvania State Police is not named in any of the seven counts in Plaintiffs' Complaint, though Pennsylvania State Police is identified and described as a defendant ("Defendant Pennsylvania State Police is a law enforcement agency established and operating under the laws of the Commonwealth of Pennsylvania").  Complaint at ¶ 9.  In terms of the Complaint's factual averments, Plaintiffs indicate that on the evening of the search, Plaintiff Keith Frndak called the Butler County State Police Barracks to file a complaint.  Id. at ¶¶ 114-116.  Otherwise, the Complaint only refers to the Pennsylvania State Police in the context of allegations regarding Bogan, as Bogan's employer.  See, e.g., ¶ 73, 75 (Bogan showed Plaintiff Diane Frndak the patch on his uniformed arm and a laminated card with the words

"Pennsylvania State Police"). Despite this, the Office of Attorney General has filed a Motion to Dismiss which groups Bogan and Pennsylvania State Police together and describes them collectively as the "PSP Defendants." Brief in Support of Motion to Dismiss (hereinafter "Bogan Brief") (Doc. 54) at 1. The Motion does not offer any argument with respect to Pennsylvania State Police specifically, and so the Court was not able to consider them. However, based on the Court's own review, because there are no factual allegations against Pennsylvania State Police in the Complaint, and because this Defendant is not named in any of the counts, the claims against Defendant Pennsylvania State Police will be dismissed. However, the Court of Appeals for the Third Circuit ("Third Circuit") has instructed that at the motion to dismiss stage, a district court "must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips v. Cty. of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008). Here, because amendment would not be futile, the claims against Defendant Pennsylvania State Police are dismissed without prejudice, and Plaintiffs will be granted an opportunity to amend their Complaint.

    2. *Qualified Immunity with respect to Corporal Gregory Bogan*

Bogan argues that he is entitled to qualified immunity, which shields government officials if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Bogan Brief at 4, citing Harlow v. Fitzgerald, 457 U.S. 800 (1982). In analyzing qualified immunity claims, a court should consider (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) whether that right was "clearly established" at the time of the defendant's alleged misconduct. See Pearson v. Callahan, 555 U.S. 223 (2009). The analysis for whether the right was clearly established turns on the "objective legal reasonableness of the action, assessed in

light of the legal rules that were clearly established at the time it was taken." Id. at 244 (internal quotations omitted).

From the facts as alleged, Bogan entered Plaintiffs' property, over their objection, without probable cause or exigent circumstances, to search for Nathan Frndak. See Complaint. While Bogan told Plaintiffs there was an arrest warrant, Plaintiffs aver that Butler County Court of Common Pleas docket for Nathan Frndak did not reflect one. Complaint at ¶¶ 80-81. Bogan appears to have had no credible reason to believe Nathan Frndak was in Plaintiff's home, besides claiming that he recognized the bedroom of one of Plaintiffs' minor grandchildren, and that he had seen Nathan Frndak's girlfriend at a nearby gas station and so he believed Nathan Frndak was "in the area." Id. at ¶¶ 93, 94. Bogan threatened to arrest Plaintiffs, "remove" them, or take them to jail multiple times. Id. at ¶¶ 53, 59, 77, 112. Because the Fourth Amendment protection against unlawful searches is obvious here and Defendants had no warrant or basis for an exception such as exigent circumstances, qualified immunity is not applicable here.

    3. *Federal Claims against Defendant Corporal Gregory Bogan (Counts 1-4)*

Bogan moves to dismiss all the claims against him because adequate facts are not alleged. The first four counts against Bogan are claims under 42 U.S.C. § 1983 ("Section 1983") under various theories: Conspiracy to violate Fourth and Fourteenth Amendment rights (Count 1); Freedom from Illegal Searches under the Fourth and Fourteenth Amendment (Count 2); Property Rights under the Fourteenth Amendment (Count 3); and Freedom from Assault under the Fourth and Fourteenth Amendment (Count 4). Id. at 13-17.[1] To make out a Section 1983 claim, a

---

[1] Plaintiffs re-started their paragraph numbering when describing the causes of action, beginning on page 13 of the Complaint. As such, the references to paragraph numbers correspond to the factual allegations in the Complaint, and the references to page numbers correspond to the causes of action.

6

plaintiff must prove that (1) defendant deprived them of constitutional rights, and that (2) defendant acted under color of state law. See Anderson v. Davila, 125 F.3d 148, 159 (3d Cir. 1997); Groman v. Twp. Of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). A plaintiff can prove that a defendant deprived them of their constitutional rights on the basis of conspiracy. See Startzell v. City of Phila., 533 F.3d 183 (3d Cir. 2008). A plaintiff may establish the existence of a conspiracy by proving that a "meeting of the minds" existed between defendants. Id. at 205. But a plaintiff need not show an actual explicit agreement to prove a Section 1983 conspiracy if there is adequate circumstantial evidence to infer that there was a "meeting of the minds," such as whether the alleged conspirators did or said something to create an understanding, the approximate time when the agreement was made, the period of the conspiracy, or the object of the conspiracy. Jutrowski v. Township of Riverdale, 904 F.3d 280, 295 (3d Cir. 2018).

All four constitutional claims essentially relate to the searches of Plaintiffs' homes on December 8, 2019—Plaintiffs repeatedly represented to the so-called "bounty hunters" (Bogan, McKay and Doe) that Nathan Frndak was not there and that they were opposed to the search, yet the "bounty hunters" entered their home anyway and Bogan threatened Plaintiffs with arrest multiple times. See Complaint. At this stage in the litigation, making all reasonable inferences from the facts in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have adequately alleged claims against Bogan for Counts 1, 2 and 4.

As for Count 3, Plaintiffs allege a violation of property rights under Section 1983, pursuant to the Fourteenth Amendment. Complaint at 15-16. Plaintiffs aver that Defendants unlawfully searched their home and other properties, which constituted "trespass," and that Defendants unlawfully destroyed "chattels." Id. By this, it appears to the Court that Plaintiffs are referring to the furniture destroyed by Defendants at Plaintiffs' second property. Id. at ¶ 119.

Bogan argues that the violation of property rights is not actionable under the Fourteenth Amendment because Plaintiffs have access to a post-deprivation remedy. Bogan Brief at 5-6. Bogan further argues that Plaintiffs have an adequate remedy under state law through Pennsylvania Rule of Criminal Procedure 588, which permits an aggrieved person to file a motion for seized property. Bogan Brief at 6.

Under the Fourteenth Amendment a state may not deprive citizens of their property. Here, Plaintiffs are alleging that Bogan, McKay and Doe, acting under the color of law, destroyed their property: "Defendant's [sic] wanton destruction of chattels in Plaintiffs' home and other properties constitutes unlawful destruction." Complaint at 16. Destroyed property is considered deprivation of property. See Brown v. Muhlenberg Twp., 269 F.3d 205, 213 (3d Cir. 2001). While some situations require pre-deprivation process, where the conduct is "random and unauthorized," as is alleged here, post-deprivation process is all that is constitutionally due. Id. Because Plaintiffs do not allege a seizure of property, Bogan's proposed Pennsylvania state law remedy likely would not provide the post-deprivation process due here, since Pennsylvania Rule of Criminal Procedure 588 covers seized property. However, the Court finds there are other post-deprivation processes available to Plaintiffs under Pennsylvania state law, notably an action for conversion. Rankin v. Smithburger, 2013 WL 3550894, at *9 (W.D. Pa. July 11, 2013) (finding Pennsylvania provides a post-deprivation process in the form of a civil action for conversion); see also Andrichyn v. TD Bank, N.A., 93 F. Supp. 3d 375, 389 (E.D. Pa. 2015) (applying Pa. law) (defining conversion as the deprivation of another's property rights without the owner's consent and without lawful justification). As such, because Plaintiffs have an adequate remedy under state law, this Count against Bogan is dismissed with prejudice.

*4. State Law Claims against Defendant Corporal Gregory Bogan (Counts 5-7)*

As for Counts 5-7, Plaintiffs bring pendant state law claims against Bogan for Invasion of Privacy (Count 5), Intentional Infliction of Emotional Distress (Count 6) and Assault (Count 7). Complaint at 17-21. These Counts are brought against all Defendants, and center on the conduct of the "bounty hunters" during their search of Plaintiffs' primary home on December 8, 2019. Under Pennsylvania law, "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Harris by Harris v. Easton Pub. Co., 483 A.2d 1377, 1383 (1984). Here, as alleged, the "bounty hunters" came into Plaintiffs' home while their minor grandchildren were present, refused repeated requests to leave despite Plaintiffs' representations that Nathan Frndak was not there, and Plaintiffs were forced to acquiesce to the search under threat of arrest. Under the liberal pleading standards afforded at the motion to dismiss stage, Plaintiffs have sufficiently pleaded a state law cause of action for Count 5.

Similarly, given the circumstances above, the Court finds that Plaintiffs have adequately pleaded a state law cause of action for intentional infliction of emotional distress. In order to show intentional infliction of emotional distress, Plaintiffs must establish the following elements: "(1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; (4) that distress must be severe." Doe v. Liberatore, 478 F. Supp. 2d 742, 765 (M.D. Pa. 2007) (quoting Hoy v. Angelone, 691 A.2d 476, 482 (1997)). Plaintiffs have sufficiently alleged that these elements are present, given the alleged conduct of the individual Defendants and Plaintiffs' allegations of physical symptoms, including "aggravation

9

of night terrors, stress, ongoing mental suffering, and difficulty sleeping and eating." Complaint at 19. Whether Plaintiffs will succeed on proving these elements is a question for another day.

Last, the Court finds that Plaintiffs have adequately pleaded a state law cause of action of assault against Bogan, given the liberal pleading standard appropriate in this stage of the case and the circumstances described through the factual averments. Under Pennsylvania law, "an assault occurs when an actor intends to cause an imminent apprehension of a harmful or offensive bodily contact." Sides v. Cleland, 648 A.2d 793, 796 (1994). According to Plaintiffs, the possibly inebriated "bounty hunters" barged into Plaintiffs' home and failed to respond in a reasonable manner to Plaintiffs' requests to see documentation. See Complaint. Bogan, in uniform, stated to Plaintiff Diane Frndak at one point that he would "place [her] in the car" and that he would "have [her] husband removed," and stated to Plaintiff Keith Frndak that he had to consent to the search or "we are taking [him] to jail." Id. at ¶¶ 53, 57, 59, 77, 112. Therefore, the Court finds that all state law claims against Bogan survive this Motion.

D. **Defendant Liberty Bail Bonds Inc.'s Motion to Dismiss (Doc. 50)**

1. *Federal Claims against Defendant Liberty Bail Bonds Inc. (Counts 1-4)*

Liberty argues that Plaintiffs have failed to state claims upon which relief can be granted because they have relied upon boilerplate legal conclusions rather than factual support, and requests that the Court dismiss all claims with prejudice. Brief in Support of Motion to Dismiss (hereinafter "Liberty Brief") (Doc. 51) at 6, 20. Plaintiffs have named Liberty in all seven counts. Complaint at 13-21. Yet when it comes to identifying Liberty's conduct, Plaintiffs' allegations do not reference Liberty at all, other than when describing the actions of other Defendants, namely McKay and Doe, and potentially "Greg, from Liberty Bonds." See

Complaint at ¶ 31.[2]  McKay and Doe are purported to have "represented themselves as agents and employees" of Liberty and have acted in furtherance of Liberty's interests.  See, e.g., id. at 13-14.  Yet Plaintiffs' response makes clear they are not pursuing a *respondeat superior* theory, and instead argue that Liberty is liable as a co-conspirator.  Liberty Response (Doc. 57) at 5.

As indicated above, to prevail on a Section 1983 claim, a plaintiff must prove that (1) defendant deprived them of constitutional rights, and that (2) defendant acted under color of state law.  See Anderson v. Davila, 125 F.3d 148, 159 (3d Cir. 1997); Groman v. Twp. Of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  A plaintiff can prove that a defendant deprived them of their constitutional rights on the basis of conspiracy.  See Startzell v. City of Phila., 533 F.3d 183, 205 (3d Cir. 2008).  A plaintiff may establish the existence of a conspiracy by proving that a "meeting of the minds" existed between defendants.  Id.  Here, Plaintiffs allege that Liberty is a co-conspirator, yet Liberty is not a person, but an entity.  Complaint at ¶ 13 ("Liberty Bail Bonds, Inc. is a corporation that provides bail bond services throughout the Commonwealth of Pennsylvania").  Therefore, to the extent Plaintiffs intend to pursue this defendant, Liberty would be liable for Section 1983 claims under the Monell standard for municipalities.  See Tarasovich v. Kocsis, 2016 WL 6636830, at *6 (W.D. Pa. Nov. 9, 2016) (Monell municipal liability applies to private corporations); Gallagher v. Green, 2014 WL 4954833, at *8 (E.D. Pa. Oct. 2, 2014) ("The standard for municipal liability in civil rights actions espoused in Monell applies equally to private corporations.").  In Monell, the court held that a government entity is responsible under Section 1983 only when the execution of a government's policy or custom inflicts the alleged constitutional violation.  Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 694 (1978).  Under Monell, a policy exists when a final decisionmaker issues an

---

[2] This individual does not make further appearances in the Complaint.

11

official edict, and a custom exists when practices are permanent and well-settled as to virtually constitute law. Fantazzi v. Temple Univ. Hosp., 2003 WL 23167247 at *6 (E.D. Pa. Apr. 11, 2003). In this context, a court should grant a motion to dismiss when a plaintiff merely alleges the existence of a conspiracy and not that a corporate policy or custom caused the alleged constitutional violation. See Gallagher (granting casino's motion to dismiss Section 1983 claims where plaintiff merely asserted that the casino and state troopers "acted in concert" and engaged in a "conspiracy" to violate plaintiff's constitutional rights); Thomas v. U.S. Airways, 2014 WL 1910245 (E.D. Pa. May 13, 2014) (granting private airline's motion to dismiss Section 1983 claims where plaintiff merely alleged a conspiracy and not that the conspiracy was a result of an airline custom or policy).

Plaintiffs currently fail to allege sufficient facts to suggest that Liberty made an agreement or the existence of a "meeting of the minds" with Bogan, McKay and Doe to deprive Plaintiffs of their constitutional rights. As discussed earlier, the allegation that McKay and Doe presented themselves as acting on behalf of Defendant Liberty, or that another apparent agent of Liberty ("Greg, from Liberty Bonds") made threatening calls to Plaintiffs does not implicate Liberty's involvement in the alleged conspiracy because *respondeat superior* cannot be the basis of liability. See, e.g., Complaint at ¶¶ 11, 27-29, 31. Further, the blanket allegation that McKay and Doe acted in furtherance of Liberty's interests and demanded that Plaintiff Keith Frndak pay Liberty does not prove conspiracy. See Complaint at 13-14, ¶ 121. While Plaintiffs argue otherwise, the result that Liberty may have benefited from the alleged conspiracy among other Defendants is not enough to support that Liberty participated in the conspiracy. In the absence of allegations identifying any policy or custom by Liberty that resulted in the alleged constitutional violation, Monell liability cannot attach.

In addition, Plaintiffs fail to satisfy the second prong of a Section 1983 claim: acting under the color of law.  A private actor can be considered a public actor for the purposes of a Section 1983 claim through several avenues, none of which apply here.  Thomas v. U.S. Airways, 2014 WL 1910245, at *3 (E.D. Pa. May 13, 2014) (internal citations omitted) ("The Court of Appeals has articulated three tests to determine if a private actor is a state actor for the purposes of a § 1983 action: (1) whether the defendant exercised powers that are "traditionally the exclusive prerogative of the state"; (2) whether the defendant acted "with the help of or in concert with state officials"; or (3) whether the "state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.").  Plaintiffs argue that Defendants acted in concert with the alleged state actor, Bogan.  Liberty Response at 6.  Yet again, Plaintiffs fail to allege any specific conduct by Liberty, rather than the individuals who purportedly worked for Liberty—McKay and Doe—in their Complaint.  In sum, Plaintiffs have failed to allege sufficient facts to make out federal claims against Liberty (Counts 1-4).[3]

    2. *State Law Claims against Defendant Liberty Bail Bonds, Inc. (Counts 5-7)*

As for Counts 5-7, Plaintiffs bring the same pendant state law claims against Liberty as they have against Defendant Bogan.  See Section 1(C)(4).  As to these claims, Liberty argues that Plaintiffs fail to meet pleading standards for all three state law claims because Plaintiffs do not allege "any actions and/or inactions on the part of Liberty that caused them harm."  Liberty

---

[3] Moreover, as indicated above and as will be discussed below, Count 3 is not a cognizable claim as to Defendants Bogan and McKay.  While the Court believes it is highly unlikely a claim can be made out against Liberty for Count 3, the Court will dismiss all claims against Liberty without prejudice to allow Plaintiffs to determine whether further amendment to their claims is necessary.

13

Brief at 16-20.  The Court agrees with Liberty's assessment that Plaintiffs fail to raise any claims against it in their Complaint and dismissal is proper.

For the reasons discussed above, Liberty's Motion to Dismiss will be granted.  However, because amendment would not be futile, the claims against Liberty are dismissed without prejudice, and Plaintiffs will be granted an opportunity to amend their Complaint.

**E. Defendant Anthony McKay's Motion to Dismiss (Doc. 47)**

McKay argues that Plaintiffs have failed to state cognizable constitutional rights violations and state tort claims against McKay, a licensed bounty hunter, and have failed to assert facts to support imposition of liability upon McKay as a state actor or co-conspirator. Brief in Support of Motion to Dismiss (hereinafter "McKay Brief") (Doc. 48).  Plaintiffs have named McKay in all seven counts.  Complaint at 13-21.  McKay moves to dismiss Counts 1-7 against him.[4]

*1. Federal Claims against Defendant Anthony McKay (Counts 1-4)*

As to the federal claims (Counts 1-4), McKay argues that bounty hunters should not be considered state actors, based on his analysis of other Circuits and legislative history.  McKay Brief at 8-10.  McKay also notes, however, the lack of Third Circuit guidance on the issue and concedes that the inquiry as to whether a private person is a state actor is "fact specific." Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995).

---

[4] The Court notes that McKay's Motion (Doc. 47) and Brief in Support (Doc. 48) move to dismiss the Second Amended Complaint against McKay in its entirety yet offer specific arguments with respect to only six counts.  Upon review, McKay's Motion and Brief include arguments to dismiss counts identified as Counts 1-6, but which correspond substantively to Counts 2-7 of the operative complaint.  As such, the Court understands McKay's motion to request dismissal of all counts (Counts 1-7), but notes the lack of any specific arguments with respect to its motion to dismiss Count 1.

Again, all four constitutional claims against McKay relate to the searches on December 8, 2019. McKay argues that the alleged facts prove that the private and state actors did not conspire together because they did not share the same objective—McKay and Doe, the private actors, wanted payment of the monetary bail, whereas Bogan, the state actor, was interested in arresting Nathan Frndak. McKay Brief at 10-12. The Court finds, however, as to Counts 1, 2 and 4, that Plaintiffs allege that Bogan, McKay and Doe appeared collectively at Plaintiffs' front door on December 8, 2019, that they searched Plaintiffs' home together, that they claimed to have the authority to conduct the search and, thereafter, jointly traveled to Plaintiffs' second house, forcibly entered it collectively and broke furniture together. Complaint at ¶¶ 38, 48-49, 117-120. Under the liberal standards applicable to the motion to dismiss stage, Plaintiffs have alleged sufficient facts to allow the Court to make reasonable inferences that Bogan, McKay and Doe were acting in concert.

As for Count 3, McKay again argues that he was not acting under the color of state law, and that he did not conspire with a state actor. For the same reasons as above, this argument is unavailing. However, as discussed above in Section I(C)(3), for due process violations for property rights under the Fourteenth Amendment, only post-deprivation process is constitutionally due, and there are other post-deprivation processes available to Plaintiffs under Pennsylvania state law. Therefore, Count 3 against McKay will be dismissed with prejudice.

    2. *State Law Claims against Defendant Anthony McKay (Counts 5-7)*

As for the state law claims, as above, the Court finds that Plaintiffs have met their pleading requirements with respect to the claims against McKay for Invasion of Privacy (Count 5) and Intentional Infliction of Emotional Distress (Count 6), as both of these counts relate to the searches that were conducted collectively by the McKay, Bogan and Doe. See supra at Section

I(C)(4). As to the Assault claim at Count 7, this appears to be based on the above-discussed threats of arrest, and McKay is not alleged to have made any such threats. McKay Response (Doc. 6-7). All the threats of arrest as alleged in the Complaint are attributed to Bogan. Complaint at ¶¶ 59, 77, 112. As such, Count 7 against McKay is dismissed without prejudice because amendment would not be futile.

### F. Further Amendment and Defendant John Doe

In their Motions to Dismiss, Defendants McKay and Liberty have expressed frustration at Plaintiffs for going back and forth on their amendments to the complaint, in a case which was initiated some time ago—on September 18, 2020. The Court need not reiterate its prior order reminding Plaintiffs that they are officers of the court. See the Court's Order at Doc. 40. Should Plaintiffs choose to amend their complaint, they may do so by **January 3, 2022**. Further, they must be prepared to make a last, best effort to state viable claims as to the claims dismissed without prejudice, because the Court will not grant further leave. See generally Taylor v. Pilewski, 2008 WL 4861446, *3 (W.D. Pa. Nov. 7, 2008) ("[the c]ourt need not provide endless opportunities" for amendment, especially where such opportunity already has been enjoyed); Houser v. Donahoe, 2013 WL 6838699, at *6 (W.D. Pa. Dec. 27, 2013) (dismissing claims without leave to amend, because "[it] would be inequitable to require [the d]efendant[s], who already once ha[d] exhaustively and successfully defended [the p]laintiff[s'] grievances, to respond to a continuous stream of formal and informal attempted amendments"), aff'd sub nom. Houser v. Postmaster Gen. of U.S., 573 Fed. Appx. 141 (3d Cir. 2014). If amendment is not timely-filed, all dismissals will be converted to dismissals with prejudice.

Finally, contemporaneous with the filing of this Memorandum Order, the Court will issue a Show Cause Order regarding Defendant John Doe.

## II. ORDER

For these reasons, the Motion to Dismiss filed by Defendants Corporal Gregory Bogan and the Pennsylvania State Police (**Doc. 53**) is **GRANTED IN PART AND DENIED IN PART**.  All claims against Pennsylvania State Police are dismissed WITHOUT PREJUDICE.  Count 3 against Bogan is dismissed WITH PREJUDICE.  All other claims against Bogan remain.

The Motion to Dismiss filed by Defendant Liberty Bail Bonds Inc. (**Doc. 50**) is **GRANTED**.  All claims against Liberty are dismissed WITHOUT PREJUDICE.

The Motion to Dismiss filed by Defendant Anthony McKay (**Doc. 47**) is **GRANTED IN PART AND DENIED IN PART**.  Count 3 is dismissed WITH PREJUDICE.  Count 7 is dismissed WITHOUT PREJUDICE.  All other claims against McKay remain.

Consistent with the above, should Plaintiffs choose to amend their complaint, they may do so by **January 3, 2022**.  As discussed above, they must be prepared to make a last, best effort to state viable claims as to the claims dismissed without prejudice. Moreover, if amendment is not timely-filed, the claims dismissed without prejudice herein, will be dismissed with prejudice.

IT IS SO ORDERED.

December 20, 2021               s\Cathy Bissoon
                                Cathy Bissoon
                                United States District Judge

cc (via ECF email notification):

All Counsel of Record