IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH FRNDAK *and* DIANE FRNDAK, | ) ) |
| Plaintiffs, | ) ) |
| | ) Civil Action No. 20-1411 |
| v. | ) ) |
| PENNSYLVANIA STATE POLICE, *et al.*, | ) Judge Cathy Bissoon ) ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

### I. MEMORANDUM

For the reasons stated below, the Motion to Dismiss filed by Defendant Liberty Bail Bonds Inc. (Doc. 62) will be GRANTED IN PART and DENIED IN PART.

**A. Background**

On January 29, 2019, Plaintiff Keith Frndak cosigned an indemnity agreement and a promissory note between his estranged son, Nathan Frndak, and Defendant Liberty Bail Bonds, Inc. ("Liberty"), agreeing to indemnify Liberty $5,000 if Nathan Frndak's bail bond was revoked. Third Amended Complaint (Doc. 61) at ¶¶ 16-18. Following Nathan Frndak's failure to appear for a hearing, the court issued a Bench Warrant, a Notice of Bond Forfeiture and a Bail Piece Order in July 2019. Id. at ¶¶ 19-21. On September 9, 2019, Nathan Frndak petitioned the court through counsel for an extension of time and stay of forfeiture, which the court granted the following day. Id. at ¶¶ 22-23.

Beginning on September 11, 2019, Plaintiff Keith Frndak began receiving calls, voicemails and texts from Defendant Anthony McKay ("McKay"), accusing Plaintiff Keith

Frndak of hiding Nathan Frndak and demanding payment. Id. at ¶¶ 24-30, 33-35, 37. McKay presented himself as an employee of Liberty. Id. at ¶ 27. McKay sent three of the identified texts in September 2019 and a fourth on November 18, 2019. Id. at ¶ 35. Another individual, who identified himself as "Greg, from Liberty Bonds," made similar threatening calls to Plaintiff Keith Frndak. Id. at ¶ 31.

On December 8, 2019, Defendant Corporal Gregory Bogan ("Bogan"), McKay and former Defendant John Doe ("Doe") (together, the alleged "bounty hunters") arrived at Plaintiffs' house while Plaintiffs and their grandchildren were home. Id. at ¶¶ 42-54. One of Plaintiffs' grandchildren answered the door first, before calling for Plaintiff Keith Frndak. Id. at ¶¶ 50-51. The "bounty hunters" barged in the door past the child. Id. at ¶ 52. When Plaintiff Keith Frndak demanded to know what the "bounty hunters" were doing, Bogan stated that they were going to search the house for Nathan Frndak. Id. at ¶ 54. Plaintiff Keith Frndak offered to talk to the "bounty hunters" outside, but they refused and insisted on searching the home. Id. at ¶¶ 56-57. One of the "bounty hunters" stated that they would search the house or that they would take Plaintiff Keith Frndak to jail. Id. at ¶ 57. Plaintiff Keith Frndak responded and said Nathan Frndak was not there. Id. at ¶ 58. Plaintiff Diane Frndak, hearing the commotion, joined the scene and asked what was going on, and Defendant Bogan responded that they were going to search the home. Id. at ¶¶ 59-60. Both Plaintiffs noticed an odor associated with the consumption of alcohol on the alleged "bounty hunters." Id. at ¶ 61. Plaintiff Diane Frndak also told the "bounty hunters" that Nathan Frndak was not there and demanded that they leave, to which Defendant Bogan replied by threatening her arrest. Id. at ¶¶ 62-63. Plaintiff Diane Frndak then asked for identification and a copy of a document purportedly signed by Plaintiff Keith Frndak, but the "bounty hunters" refused. Id. at ¶¶ 64-71. Plaintiff Diane Frndak stated

that she would call the police, at which point one of the "bounty hunters" stated that Defendant Bogan was the police, which Defendant Bogan confirmed.  Id. at ¶¶ 71-74.  Plaintiff Diane Frndak asked Defendant Bogan for law enforcement identification, and Defendant Bogan pointed to a patch on his arm and his name tag and showed her a laminated card.  Id. at ¶¶ 76-80.  Defendant Bogan again threatened to arrest Plaintiffs and to call Children and Youth Services to remove Plaintiffs' grandchildren.  Id. at ¶¶ 81-82.  When Plaintiff Diane Frndak asked for paperwork authorizing the search, Defendant Bogan responded that there was an arrest warrant out for Nathan Frndak and did not show her any documentation.  Id. at ¶¶ 83-84, 86-89.  Plaintiffs aver that Nathan Frndak's docket at the Butler County Court of Common Pleas does not include an arrest warrant.  Id. at ¶ 85.  The "bounty hunters" thoroughly searched the home.  Id. at ¶¶ 90, 93.  Another person, unidentified but alleged to be "[a]nother apparent PSP Trooper, who had apparently been searching the property" entered the home and did not show identification when asked.  Id. at ¶¶ 103-105.  Before leaving, Bogan told the Plaintiffs they would be back on Christmas.  Id. at ¶¶ 110-111.

After the "bounty hunters" left Plaintiffs' home, Plaintiff Keith Frndak received a call from Bogan, who accused Plaintiff Keith Frndak of lying and calling Nathan Frndak as soon as the "bounty hunters" had left, and threatened to subpoena Keith Frndak's phone records and to come back to arrest them.  Id. at ¶¶ 112-117.  Plaintiff Keith Frndak called the Butler County State Police Barracks to file a complaint.  Id. at ¶¶ 118-120.  The "bounty hunters" traveled to another house owned by Plaintiffs.  Id. at ¶ 121.  They forcibly entered that house, broke furniture, and discovered and disabled all but one of the security cameras.  Id. at ¶¶ 122-124.

The following evening, December 9, 2019, Defendant McKay texted Plaintiff Keith Frndak stating, "Why don't you just pay the bond and fess to liberty bail bonds, and we won't

bother you anymore or surrender your son and pay to rebond him out and have less headaches." Id. at ¶ 125. On December 10, 2019, Plaintiff Keith Frndak paid $5,000 to Liberty. Id. at ¶ 126. The Third Amended Complaint states that "on information and belief," Defendants McKay, Bogan, and Doe received payment from Liberty in exchange for procuring Plaintiff Keith Frndak's payment. Id. at ¶ 128.

**B. Liberty's Motion to Dismiss (Doc. 62)**

*1. State Law Claims against Liberty (Counts 5-9)*

In Counts 5-7 of the Third Amended Complaint, Plaintiffs continue to bring the same pendant state law claims against Liberty as they have against the individual Defendants – invasion of privacy (Count 5), intentional infliction of emotional distress (Count 6) and assault (Count 7). Previously, the Court denied Defendant Bogan's Motion to Dismiss these claims against him and denied Defendant McKay's Motion to Dismiss the invasion of privacy (Count 5) and intentional infliction of emotional distress claims (Count 6) against him. (Doc. 59). The Court granted Defendant McKay's Motion to Dismiss the assault claim (Count 7) against him without prejudice and with leave to amend. See id.[1] The Court dismissed all of the state law claims against Liberty because Plaintiffs failed to allege any actions and/or inactions on the part of Liberty that caused them harm. See id. at 13-14. This dismissal was without prejudice to Plaintiffs' ability to amend the complaint and make a "last, best effort" to state viable claims. See id. After review, Liberty's Motion to Dismiss will be granted in part and denied in part as follows.

---

[1] Although the Third Amended Complaint again names Defendant McKay in the assault count, McKay (and Bogan) elected to file an Answer in lieu of a Motion to Dismiss. (Docs. 64, 70). The Court does not address the viability of those counts as to those Defendants.

a. Count 8 – Negligent Entrustment

Liberty's Motion to Dismiss new Count 8, "Negligent Entrustment," is granted. Count 8 asserts that to recover on their negligent hiring/retention/supervision/entrustment theory under Pennsylvania law, Plaintiffs must show that: the employer defendant knew or should have known about the violent propensity of the employee, the employment relationship creates a situation in which a third party is likely to be harmed, and the employee harms a third party. *See* Third Am. Compl. ¶180 (citing Dowling v. Blue Ridge Communications, 16 Pa. D. & C. 5th 276, 278 (Pa. Ct. Com. Pl. 2010)). As the Dowling case to which Liberty cites emphasizes, the employer's knowledge of prior conduct of the employee is critical to this analysis. *See* Dowling, 16 Pa. D. & C. 5th at 278-79 (citing Hutchison *ex rel.* Hutchison v. Luddy, 742 A.2d 1052, 1059-60 (Pa. 1999) and finding that the plaintiff's well-plead facts failed to establish prior incidents that would put the employer on notice of the employee's behavioral propensities).

Here, Count 8 contains only conclusory allegations that Liberty "either knew or should have known about the violent propensity of Anthony McKay because multiple criminal and civil charges filed against McKay *[sic]*," and that, despite its knowledge of McKay's "propensity for violence," Liberty employed McKay as a bounty hunter. Third Am. Compl. ¶¶ 181-182. In their Brief, Plaintiffs further point to paragraphs 38-41 of the Third Amended Complaint as the factual allegations "underpinning" their negligent entrustment claim. *See* Pl. Br. (Doc. 72), at 2. Those paragraphs describe only two events: (1) "[i]n 2017, McKay had been charged with terroristic threats, a first degree misdemeanor, and witness intimidation, a third degree felony, in connection with an incident that involved McKay and several City of Pittsburgh police officers," and (2) "[o]n November 14, 2019, McKay was charged in Allegheny County with Firearms not to be Carried without a License, a Third Degree Felony, and Disorderly Conduct, a Third Degree

Misdemeanor." Third Am. Compl. ¶¶ 38, 40. The "2017 charges were eventually Nolle Prossed and a civil suit arising out the same incident settled out of court." Id. ¶ 41. As to the two 2019 charges, Defendant McKay "was later found guilty of the Disorderly Conduct charge following a non-jury trial." Id. ¶ 39.

Taking these allegations as true, they do not plead sufficient knowledge to state a claim for "negligent entrustment" in this case. As an initial matter, the paragraphs of the pleading that address Liberty's knowledge consist largely of conclusory statements that parrot the elements of the tort at issue. See, e.g., Third Am. Compl. ¶¶ 181-182. Moreover, even assuming that Liberty knew or should have known of the existence of the charges at issue, the Third Amended Complaint does not specify the underlying conduct that led to those charges or state any facts suggesting that Liberty was aware of that conduct. Additionally, Plaintiffs admit that the 2017 charges were *nolle prossed*,[2] and that the 2019 charges were not filed until November 15, 2019, after the beginning of the course of conduct at issue in this case. Id. ¶¶ 38-41. Although McKay's final actions here occurred shortly after those charges, McKay was not tried until well after the incidents at issue, and was convicted only of the M3 disorderly conduct charge. These facts simply are insufficient to establish the propensity for violence Plaintiffs aver.

For all of these reasons, Count 8 is dismissed. Because Plaintiffs were instructed in the last Court Order (Doc. 59) that they must be prepared to make a last, best effort to state viable claims, and because further amendment would be futile, this dismissal is with prejudice. *See generally* Taylor v. Pilewski, 2008 WL 4861446, *3 (W.D. Pa. Nov. 7, 2008) ("[the c]ourt need not provide endless opportunities" for amendment, especially where such opportunity already

---

[2] "A *nolle prosequi* is a voluntary withdrawal by the prosecuting attorney of proceedings on a particular bill or information." Commw. v. Whiting, 500 A.2d 806, 807 (Pa. 1985).

has been enjoyed); Houser v. Donahoe, 2013 WL 6838699, at *6 (W.D. Pa. Dec. 27, 2013) (dismissing claims without leave to amend, because "[it] would be inequitable to require [the d]efendant[s], who already once ha[d] exhaustively and successfully defended [the p]laintiff[s'] grievances, to respond to a continuous stream of formal and informal attempted amendments"), aff'd sub nom. Houser v. Postmaster Gen. of U.S., 573 F. App'x 141 (3d Cir. 2014).

    b. Count 9 – Vicarious Liability

Liberty's Motion to Dismiss new Count 9, "Vicarious Liability," is denied. In the Order granting Liberty's Motion to Dismiss the Section 1983 claims against it in the Second Amended Complaint, the Court explained that Plaintiffs' Response to that Motion "ma[de] clear they are not pursuing a *respondeat superior* theory, and instead argue that Liberty is liable as a co-conspirator." (Doc. 59, at 11). The Court then concluded that Plaintiffs failed to allege sufficient facts to suggest that Liberty made an agreement with the individual Defendants to deprive Plaintiffs of their constitutional rights, or that Liberty was acting under the color of law. *See id.* at 12-13. The Court, however, dismissed the claims without prejudice, and with leave to make a last, best effort to amend.

In the Third Amended Complaint, Plaintiffs abandon the constitutional claims against Liberty and, instead, assert a vicarious liability theory as to the state law claims at Counts 5-7 arising from actual or apparent authority. Third Am. Compl. ¶¶ 185-189. Plaintiffs aver that Defendant McKay[3] acted as an agent under the authority of Liberty as principal because his actions inured to the benefit of Liberty, they were compensated by Liberty, and because he

---

[3] Although it is unclear whether the Third Amended Complaint includes Defendant Bogan in the agency allegations, Plaintiffs focus solely on McKay in their brief. *See* Pls.' Br. (Doc. 72), at 13-15 ("[T]he facts as alleged in the Third Amended Complaint support the inference that Liberty, whether directly, indirectly, or apparently, granted authority to at least Defendant McKay.").

manifested to Plaintiffs that he was acting on behalf of Liberty. *Id.* ¶¶ 11, 158-169, 176, 188 [misnumbered in the pleading as ¶ 177]; *see also id.*. ¶¶ 27-29 (asserting that McKay represented himself to Plaintiffs as an employee of Liberty and identified himself as a Liberty employee on his Facebook page).

It is well-settled in Pennsylvania that "an employer is held vicariously liable for the negligent acts of his employee which cause injuries to a third party, provided that such acts were committed during the course of and within the scope of the employment." Sutherland v. Monongahela Valley Hosp., 856 A.2d 55, 62 (Pa. Super. Ct. 2004). An employee's conduct is considered "within the scope of employment" for the purpose of vicarious liability if: "(1) it is of the kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, to serve the employer's purpose; and (4) if force is used intentionally by the employee against another, the use of force is not unexpected by the employer." Dowling, 16 Pa. D. & C. 5th at 279; *see also* Volunteer Fire Co. v. Hilltop Oil Co., 602 A.2d 1348, 1351-52 (setting forth the elements required to establish an agency relationship).

Given the liberal pleading standards appropriate at this stage of the case, as well as the nature of the bail bond industry, the Court finds that Plaintiffs have adequately pleaded a state law cause of action against Defendant Liberty under a vicarious liability/agency theory. Whether Plaintiffs will succeed in proving the requisite elements remains a question for another day. Likewise, although the exact nature of the relationship between Liberty and McKay presently may be unclear, I agree with Plaintiffs that this fact-dependent question is best answered after discovery. *See, e.g.*, Klein v. Com. Energy, Inc., 256 F. Supp. 3d 563, 584 (W.D. Pa. 2017) ("Whether an individual or entity is an 'independent contractor' such that the party contracting

with that individual or entity would not be liable for the conduct of that individual or entity or an 'agent' such that [defendant debt collection agency] would be liable for the conduct of its agent depends on the facts and circumstances of each case" (citation omitted)); Volunteer Fire Co., 602 A.2d at 1351 ("Whether an agency relationship exists is a question of fact.").

    c. Counts 5-7 – State law tort claims against Liberty

The Third Amended Complaint continues to name Liberty as a Defendant as to the state law tort claims at Counts 5-7 (invasion of privacy, intentional infliction of emotional distress, and assault). Third Am. Compl. ¶¶ 155-178. Liberty argues that the Court should dismiss these claims against it for the same reasons it dismissed them from the Second Amended Complaint. *See* Liberty Br. (Doc. 63) at 9-13 (arguing, *inter alia*, that Plaintiffs have failed to allege facts averring any actions or inactions of Liberty that caused harm). Unlike the Second Amended Complaint, however, Plaintiffs no longer purport to allege that Liberty personally committed any action or inaction. Rather, as set forth above, Plaintiffs assert liability based on a *respondeat superior* and/or agency theory. *See* Pl. Br. at 10-12 (invoking agency and *respondeat superior* doctrines in connection with Counts 5-7). To the extent Counts 5-7 set forth the torts underlying Plaintiffs' vicarious liability/agency theory, Liberty's Motion to Dismiss these counts is denied.

## II. ORDER

For these reasons, the Motion to Dismiss filed by Defendant Liberty Bail Bonds, Inc. (**Doc. 62**) is **GRANTED IN PART AND DENIED IN PART**. Count 8 is DISMISSED WITH PREJUDICE. All other claims against Liberty remain. Liberty shall have fourteen (14) days from the date of this Order to file its Answer to Plaintiffs' Third Amended Complaint and Defendant McKay's Crossclaim. Once Liberty answers, the Court will enter an order setting an initial case management conference.

IT IS SO ORDERED.

September 30, 2022

s\Cathy Bissoon
Cathy Bissoon
United States District Judge

cc (via ECF email notification):

All Counsel of Record